**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

-v-

**JONATHAN[1] M. SEMBER,**

       **Defendant.**

Case No. 3:14-cr-141

Judge Thomas M. Rose

---

**ENTRY AND ORDER OVERRULING SEMBER'S MOTION TO SUPPRESS (Doc. #14) AND OVERRULING SEMBER'S MOTION TO DISMISS (Doc. #13)**

---

This matter comes now before the Court a Motion To Dismiss (doc. #13) and a Motion To Suppress (doc. #14) filed in this case by Defendant John M. Sember ("Sember"). Sember seeks to suppress evidence seized from the search of his home on March 28, 2014. Sember also seeks to dismiss the indictment against him due to the spoilation of allegedly exculpatory evidence by law enforcement.

The Court conducted a hearing on these two (2) Motions (the "1/16/15 Hearing") following which it set a briefing schedule. (Doc. #17.) Sember has filed a Post-Hearing Brief In Support of both of his Motions, the Government has responded and Sember has replied. The findings of fact will first be set forth followed by the relevant legal provisions and an analysis of the Motions.

**FINDINGS OF FACT**

---

[1] The Defendant's name on the Indictment has been changed to John M. Sember. (Notation Order 11/01/2014.)

Sember has been indicted for stealing certain United States Air Force sensitive and proprietary technical, engineering and computer data and codes having a value in excess of $1,000 in violation of 18 U.S.C. § 641. Sember's Trial is currently set to begin May 4, 2015.

Sember was the lead electrical engineer on a "program" being conducted for the U.S. Government by a contractor. (1/16/15 Hearing Transcript ("Tr.") Ex. 2.) Effective at midnight on March 14, 2014, Sember's employment on the "program" was terminated. (Id.) On March 18, 2014, Sember returned his laptop computers and external hard-drive. (Id.) On March 21, 2014, Sember said that he destroyed all of the data on his issued computers to include the external hard-drive. (Id.) The Government believed that Sember had not destroyed the data but likely had the data stored on a home computer. (Id.)

On March 28, 2014 multiple law enforcement officers executed a search warrant (the "Search Warrant") at a residence located at 1979 Centralia Avenue in Fairborn, Ohio (the "Residence"). (Id. at 78) The search was for classified materials. (Id. at Ex. 2.) Agent Pangburn admitted that the Search Warrant limited recovery to information related to classified material. (Id. at 62.)

The search warrant authorized entry and search commencing at 6:00 a.m. (Id. at Ex. 4.) The Residence was the home of Defendant Sember. (Id. at 45, 103-04.)

**The Search Warrant**

The Search Warrant described the premises to be searched as:

1979 Centralia Avenue, Fairborn, Ohio is a single-story ranch with a double garage door. The house is grey in color with a bay window in front, and is located on the west side of Centralia and has an east-facing entrance. The nearest intersection is Dayton Yellow Springs Road and Beaver Valley Road.

(Id. Ex. 3.)

The Search Warrant authorizes the search for and seizure of "documents, material and/or files containing classified material in any form wherever they may be stored or found…" (Id.) It was issued by Magistrate Judge Merz on March 22, 2014, and was to be executed in the daytime between 6:00 a.m. and 10:00 p.m. before April 10, 2014. (Id.)

The Application for the Search Warrant was completed by FBI Agent Andrew J. Eilerman ("Agent Eilerman"). It was sworn to before Magistrate Judge Merz on March 27, 2014. (Id. Ex. 2.) Therein Agent Eilerman attests that he is investigating the activities of Sember for possible violations of 18 U.S.C. §§ 641 and 1832(a)(2) and further describes that investigation to date. (Id.) Finally, Agent Eilerman attests that he has probable cause to believe Sember has violated 18 U.S.C. §§ 641 and 1832(a)(2) and that evidence of these violations is located at 1979 Centralia.

FBI Agent Pangburn testified that the search warrant limited items to be seized to classified information. (Id. at 62.) However, Agent Pangburn also testified that pre-classified information, classified information and proprietary information was actually being seized. (Id. at 74.)

**The Search**

The search was conducted by the Federal Bureau of Investigation on March 28, 2014. (Id. at 40, Ex. 4.) Included in the search operation were members of the FBI, the FBI Swat Team and Fairborn Police Department Officers Maguire, Hardman and Bertles. (Id. at 26, 40.) Uniformed Fairborn Police Officers were present to indicate to the public that the search was an official police action. (Id. at 40.)

A variety of items were seized by the FBI, both classified and non-classified. (Id. at 68,

Ex. 4.) Included were computers, CDs, hard drives, flash cards, notebooks, papers, cell phones and a FALO LA-4PRO DVR (the "DVR"). (Id.) FBI Agent Hawley testified that the DVR was seized because it might contain evidence relative to the case and because it contained methods of approach. (Id. at 80.) Agent Pangburn was not aware that the garage and vehicle were searched (id. at 65), and nothing was reported seized from either the shed or parked truck (id. at Ex. 4). Finally, the Agents executing the search warrant turned some, if not all, of Sember's surveillance cameras upward . (Id. at 63.)

**Timing of the Search**

Testimony regarding the timing of the search was received from various individuals. Fairborn Police Officer Maguire was a party to the search operation. (Id at 15.) He testified that he was dispatched between 4:30 and 5:00 a.m. the morning of the search. (Id.) He and other Fairborn Police Officers met at the Kmart store near Sember's home, were there for 10-15 minutes and then went to the residence. (Id. at 16.) Fairborn Police Officer Hardman was also dispatched to assist, getting the dispatch call at 5:24 a.m. (Id. at 4-5.)

FBI Agent Pangburn testified that the search team arrived at Sember's residence at 6:01 or 6:02 a.m. (Id. at 42.) The search team approached, knocked and, when no one answered, used a battering ram to open the front door. (Id. at 43-44.) When the door opened, Sember was standing in the doorway. (Id. at 44.)

Sember testified that he was awakened by a loud crash followed by someone shouting "FBI." (Id. at 104.) When he then looked at his clock, it was "five something." (Id.) Sember testified that he normally kept his clock ten minutes fast. (Id.)

Sember, according to Agent Pangburn, was taken into custody within a minute of the

"knock and announce" for the search. (Id. at 44.) Fairborn Police Officer Bertles testified that Sember was brought to his cruiser within 20 to 40 minutes after the residence was entered by the search team. (Id. at 23.) Fairborn Police Officer Maguire testified that Sember was removed from the residence between 10 and 30 minutes after the search team entered the residence. (Id. at 17.) Fairborn Police Dispatcher Levandusky confirmed that the Fairborn Police Log indicates that Sember was in custody by 6:10 a.m. (Id. at 27.)

### Events After the Search

On August 27, 2014, Agents Eilerman and Pangburn returned items to Sember which had been seized but later determined to not be significant. (Id. at 50-51.) Agent Pangburn testified that, at that time, Sember, referring to the DVR, said, "I don't want it. You can keep it." (Id. at 51.) Agent Pangburn took this statement as Sember's intent to abandon the DVR. (Id. at 52.)

Sember testified that he told Agent Eilerman, "You sure you want to give that [the DVR] back to me now." (Id. at 101.) Sember then explained that the DVR is from his security system and contained video of the entry team entering his home. (Id. at 101.) According to Sember, the DVR would contain images confirming the search of his truck and shed and would also confirm the time agents entered the residence. (Id. at 116-19.)

The Agents retained the DVR. (Id. at 115.) As a result of the discussion at the time between Agents Eilerman and Pangburn and Sember, Sember believed that the DVR would be returned to him at a later time with the data intact. (Id. at 115.) The DVR was later "wiped clean" by the FBI's forensic team and returned to Sember's Counsel. (Id. at 52.)

The FBI had no court order to destroy the contents of the DVR nor did they seek Sember's permission. (Id. at 55.) Also, the individuals responsible for destruction of the

evidence on the DVR were not aware that Defense Counsel had requested the information on the DVR from the U.S. Attorney's Office. (Id. at 55.) Finally, the FBI has no written protocol that would permit the destruction of evidence. (Id. at 91-92.)

## RELEVANT LEGAL PROVISIONS

### The Search Warrant

The Fourth Amendment to the United States Constitution protects the rights of individuals against unreasonable searches and seizures. *United States v. Ganias*, 755 F.3d 125, 133 (6th Cir. 2014). A search occurs when the Government acquires information by either "physically intruding on persons, houses, papers, or effects" or otherwise invades an area in which the individual has a reasonable expectation of privacy. *Id.*(citing *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013)). "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *Id.*(citing *United States v. Jones*, 132 S. Ct. 945 n.5 (2012)). Finally, the party seeking suppression of evidence obtained by a search has the burden of proving that the search was unlawful. *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991).

"The ultimate touchstone of the Fourth Amendment is reasonableness." *Ganias*, 755 F.3d at 134(citing *Missouri v. McNeely*, 133 S. Ct. 1552, 1569 (2013)). Also, "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

"[A] warrant will issue only if: (1) the Government establishes probable cause to believe the search will uncover evidence of a specific crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized." *Ganias*, 755 F.3d at 134. Exceptions have

been made "in comparatively rare instances" where documents were so intermingled that they could not be sorted at the site. *Id.* at 135. For example, if stolen goods are intermingled with and indistinguishable from legitimately owned goods, the entire class of property may be seized temporarily for inspection and sorting. *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir. 1999).

Even when a search or seizure violates the Fourth Amendment, the evidence obtained is not automatically precluded from being used by the Government. *Ganias*, 755 F.3d at 136. Suppression of the evidence seized is required only when the Government agents effect a widespread seizure of items that were not within the scope of the warrant and the Government agents do not act in good faith. *Id.* Government agents act in good faith when they perform searches conducted in objectively reasonable reliance on binding appellate precedent. *Id.* Finally, unlawfully obtained evidence may be used by the Government if the Government can show that the evidence inevitably would have been acquired through lawful means. *United States v. Garcia*, 496 F.3d 495, 505 (6th. Cir. 2007).

## **Particularity of the Search Warrant**

To pass Constitutional muster, the search warrant must describe with particularity the items to be seized. *United States v. Bruce*, 396 F.3d 697, 709 (6th Cir. 2005), *vacated on other grounds* by *United States v. Bruce*, 405 F.3d 1034 (6th Cir. 2005). The particularity requirement eliminates the danger of the executing officer having unlimited discretion of what is subject to seizure. *United States v. Greene*, 250 F.3d 471, 476-77 (6th Cir. 2001).

However, the particularity requirement is flexible depending upon the type of items to be seized and the crime involved. *Bruce*, 396 F.3d at 709. Thus, where a warrant adequately describes a category of papers to be seized, the warrant is not lacking in particularity merely

because the officers executing the warrant must exercise minimal judgment as to whether a particular document falls within the described category. *Id.*(citing *United States v. Ables*, 167 F.3d 1021, 1034 (6th Cir. 1999)). Further, the search warrant is not lacking in particularity where the evidence seized is reasonably related to the offense which formed the basis for the search warrant. *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003).

The language of the search warrant is to be construed in light of an illustrative list of seizable items. *Greene*, 250 F.3d at 477-78. Thus, general descriptions of property pass Constitutional muster if descriptions of specific types of that property have already been furnished and different types of that property would be relevant in determining the crime. *Id.* at 478.

Also, to pass Constitutional muster, the search must not exceed the scope of the search warrant in the places to be searched. *Garcia*, 496 F.3d at 507. The remedy for such a Fourth Amendment violation is suppression of only the unlawfully seized evidence. *Id.*(citing *Waller v. Georgia*, 467 U.S. 39 n.3 (1984)).

Finally, to pass Constitutional muster, the search warrant must describe the place to be searched with particularity. *United States v. Pelayo-Landero*, 285 F.3d 491, 495-96 (6th Cir. 2002). However, an error in description does not automatically invalidate a search warrant. *Id.* at 496. The test is "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *Id*.

## Dismissal of the Indictment

In this case, Sember argues that the Indictment against him should be dismissed because the Government intentionally destroyed evidence. The Due Process Clause of the United States Constitution is violated when material exculpatory evidence is withheld. *Illinois v. Fisher*, 540 U.S. 544, 5457 (2004) However, the failure by the Government to preserve potentially useful evidence is not violative of the Due Process Clause unless a criminal defendant can show bad faith on the part of the Government. *Fisher*, 540 U.S. at 545. More specifically, the defendant must show: (1) that the Government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means. *United States v. Jobson*, 102 F.3d 214, (6th Cir. 1996)(citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)). Thus, among other things, the Government's Constitutional duty to preserve evidence is limited to evidence that has an exculpatory value which was apparent before the evidence was destroyed. *Jobson*, 102 F.3d at 219(citing *California v. Trombetta*, 467 U.S. 479, 489 (1984)).

## ANALYSIS OF MOTION TO SUPPRESS

Sember offers four arguments why his Motion To Suppress should be granted. Each will be addressed seriatim.

### Scope of Warrant Exceeded By Entering Early

Sember first argues that the nature of the search exceeded the scope of the warrant because there was evidence that the Officers executing the Search Warrant entered the Residence before 6:00 a.m., the earliest starting time specified on the Search Warrant. Agent Pangburn testified that the search began shortly after 6:00 a.m. No one else testified as to when the search

began. Other Officers testified as to the timing of related events, but the testimony is too approximate to make a reasonable inference from the testimony. An inference could be drawn from Sember's testimony that his clock indicated, possibly when he was disoriented by the very loud crash, that the search began before 6:00 a.m., but this, of course is self-serving and not supported by any other evidence. Therefore, Sember has not satisfied his burden of showing that the Search Warrant was executed before 6:00 a.m.

### **Scope of Warrant Exceeded By Seizing Documents Outside Authority of Warrant**

Sember next argues that the scope of the Search Warrant was exceeded when the Government removed information that was not classified. However, the Search Warrant authorizes the seizure of documents containing classified material in any form including any and all hard-copy documents that may contain U.S. Government proprietary information. (Tr. Ex. 3.) Thus, the Search Warrant arguably authorized the seizure of information that was not classified.

Even if the Search Warrant did not authorize the seizure of non-classified information, items not specifically described in a search warrant may nevertheless be seized if they are "reasonably related" to the offenses which form the basis for the search warrant. *Wright*, 343 F.3d at 863. In this case, the offenses which formed the basis for the Search Warrant were the suspected theft of U.S. Government property in violation of 18 U.S.C. § 641 and the suspected conversion of U.S. Government and DOD contractor owned trade secrets in violation of 18 U.S.C. § 1832(a)(2). And, Sember offers no argument or evidence that the items seized where not reasonably related to these offenses. Thus, Sember has not satisfied his burden of showing that the scope of the Search Warrant was exceeded by the removal of information that was not classified.

### Areas Outside of Scope of Warrant Searched

Sember next argues that the officers searched out-buildings and vehicles that were not included in the scope of the Search Warrant. This argument is without merit for at least three reasons. First, Sember has not identified evidence that any out-buildings or vehicles were searched. Second, no evidence was reported seized from the out-buildings or vehicles. And third, the Government does not intend to use any evidence from the out-buildings or vehicles. Thus, Sember has not satisfied his burden of showing that the scope of the Search Warrant was exceeded by the search of out-buildings and/or vehicles.

### No Probable Cause To Search

Sember's final argument is that the Search Warrant was not based upon probable cause that confidential information or proprietary information would be found at the Residence. However, in this case, Agent Eilerman's Affidavit In Support of an Application for a Search Warrant provides a substantial basis for probable cause to search the Residence for confidential information in any form including any and all hard-copy documents that may contain U.S. Government proprietary information. (Id. Ex. 2.)

Agent Eilerman affirms that he is investigating Sember's activities for possible violations of specified federal statutes. Agent Eilerman had reliable information that Sember may have sensitive information stored on his home computer. This information was beyond speculation and, therefore, reliable because of Sember's background and experience as determined and affirmed by Agent Eilerman. The sensitive information was developed by Sember while employed and thus did not belong to him. Further, the destruction of this sensitive information could result in a significant loss to American taxpayers. Agent Eilerman concluded that there

was probable cause to believe that Sember mishandled potentially damaging proprietary information without proper authority and that evidence of such was located at the Residence.

Thus, Sember has not satisfied his burden of showing that the Search Warrant was not based upon probable cause.

### **Conclusion Regarding Search Warrant**.

Sember has not satisfied his burden of showing that the scope of the Search Warrant was exceeded. Therefore, Sember's Motion To Suppress (doc. #14) is OVERRULED.

### **ANALYSIS OF MOTION TO DISMISS**

Sember seeks to dismiss the Indictment because the Government destroyed potentially exculpatory evidence in bad faith. Specifically, the Government erased the contents of the DVR before returning it to Sember's Counsel. The Government responds that no exculpatory evidence was ever determined to be contained on the DVR and no "bad faith" has been established.

The result of this Motion To Dismiss turns on whether the Government failed to preserve material exculpatory evidence or failed to preserve potentially useful evidence. If the Government failed to preserve material exculpatory evidence, bad faith need not be shown. If the Government failed to preserve potentially useful evidence, bad faith and other related elements must be shown.

In this case, there is no evidence that the DVR contained material exculpatory evidence. However, the DVR may have contained potentially useful evidence of the time the Search Warrant was executed, what outside areas were searched and what Sember may have brought into the Residence. Therefore, Sember must show that the Government acted in bad faith, that the exculpatory value of the evidence was apparent before its destruction and that the nature of

the evidence was such that he would be unable to obtain comparable evidence by other reasonably available means.

### Bad Faith

"To establish bad faith…, a defendant must prove "official animus" or a "conscious effort to suppress exculpatory evidence." *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996)(citing Trombetta, 467 U.S. at 488). No evidence of "official animus" was identified. In fact, Agent Hawley testified that there was no normal practice regarding destruction of the data on the DVR.

Regarding a "conscious effort," although they consciously erased the DVR, Agent Pangburn thought that Sember no longer wanted the DVR based upon his conversation with Sember. Thus, there is no evidence of a conscious effort to destroy what may have been potentially useful evidence. Further, the Government does not know what was on the DVR. (Tr. at 53.)

Without evidence of bad faith on the part of the Government, there is no need to consider the other elements that Sember must prove. And, the Court has not done so.

### Conclusion On Motion To Dismiss

The DVR contained potentially useful evidence. Therefore, among other things, Sember must show that the Government acted in bad faith when the DVR was erased. This, he has not done. Therefore, Sember's Motion To Dismiss (doc. # 13) is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio this First Day of April, 2015.

                                                          **s/Thomas M. Rose**
                                          _____
                                                      THOMAS M. ROSE
                                          UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record